**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Charleston Division**

STERLING MISANIN, et al.,

        *Plaintiffs*,

    v.

ALAN WILSON, in his official capacity as Attorney General of South Carolina, et al.,

        *Defendants*.

Case No.: 2:24-cv-04734-BHH

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................6

PROPOSED CLASSES ......................................................................................................7

STATEMENT OF FACTS ..................................................................................................9

I.      The Healthcare Ban............................................................................................................9

      A.      The Healthcare Ban applies equally to all transgender minors who have or will access "gender transition procedures" in South Carolina................................10

      B.      Plaintiffs Grant Goe and Nina Noe, like all transgender minors with gender dysphoria who are seeking medical care, are being denied medically necessary care under S.C. Code Ann. § 44-42-320. ...............................................10

      C.      The Healthcare Ban applies equally to all parents of transgender adolescents who have been or will be prescribed "gender transition procedures" in South Carolina............................................................................................................11

      D.      Plaintiffs Nancy Noe and Grant Goe, like all parents of transgender adolescents with gender dysphoria, are being denied their fundamental right to direct the upbringing of their children by S.C. Code Ann. § 44-42-320. ..........11

II.     The Public Funds Restriction............................................................................................12

      A.      The Public Funds Restriction denies health insurance coverage to all those enrolled in state-funded health insurance plans who need "gender transition procedures." ........................................................................................................15

LEGAL STANDARD.........................................................................................................21

ARGUMENT.......................................................................................................................22

I.      Each Proposed Class satisfies the requirements of Rule 23(a). ........................................11

      A.      Numerosity...............................................................................................................11

      B.      Commonality............................................................................................................12

      C.      Typicality .................................................................................................................15

      D.      Adequacy .................................................................................................................18

II.     Each Proposed Class Satisfies Rule 23(b)(2).....................................................................21

CONCLUSION....................................................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
28 F.4th 513 (4th Cir. 2022) ......................................................................................15

*Brown v. Lexington Cnty.,*
No. 3:17-CV-1426-SAL, 2021 WL 856878 (D.S.C. Mar. 5, 2021) .......................................20

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006) ......................................................................................15

*Doe v. Ladapo*,
No. 4:23-CV-114-RH, 2023 WL 8271764 (N.D. Fla. Oct. 18, 2023)...................................16

*Fain v. Crouch*,
342 F.R.D. 109 (S.D.W. Va. 2022), *aff'd sub nom. Kadel v. Folwell*,
100 F.4th 122 (4th Cir. 2024) ...................................................................... *passim*

*Flack v. Wisc. Dep't of Health Servs.*,
331 F.R.D. 361 (W.D. Wisc. 2019) ............................................................10, 17, 22

*Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318 (W.D.N.C. 2020), *aff'd*
2021 WL 4144028 (4th Cir. June 28, 2021) ...............................................................15

*Haywood v. Barnes*,
109 F.R.D. 568 (E.D.N.C. 1986) ..................................................................................11

*Hewlett v. Premier Salons Int'l, Inc.*,
185 F.R.D. 211 (D. Md. 1997)......................................................................................19

*Hyland v. Navient Corp.*,
48 F.4th 110 (2d Cir. 2022), *cert. denied* 143 S. Ct. 1747 (2023).........................................21

*Hyland v. Navient Corp.*,
No. 18-CV-90310-DLC, 2020 WL 6554826 (S.D.N.Y. Oct. 9, 2021)...................................21

*K.C. v. Individual Members of Med. Licensing Bd. of Indiana*,
345 F.R.D. 328 (S.D. Ind. 2024)...................................................................... *passim*

*Kadel v. Folwell*,
100 F.4th 122 (4th Cir. 2024) .................................................................................13, 14

*Kenny v. Wilson*,
No. 2:16-CV-2794-MBS, 2021 WL 720449 (D.S.C. Feb. 24, 2021), *aff'd sub*
*nom Carolina Youth Action Project v. Wilson*, 60 F.4th 770 (4th Cir. 2023) ................ *passim*

i

*King v. Governor of the State of New Jersey.*,
  757 F.3d 216 (3rd Cir. 2014) ................................................................................21

*Moodie v. Kiawah Island Inn Co.*,
  309 F.R.D. 370 (D.S.C. 2015) ...............................................................15, 17, 18

*Moyer v. Home Point Fin. Corp.*,
  No. CV-RDB-20-3449, 2023 WL 6642663 (D. Md. Oct. 11, 2023).....................10

*Nelson v. Warner*,
  336 F.R.D. 118 (S.D.W. Va. 2020).......................................................................19

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) ................................................................................21

*United States v. North Carolina*,
  192 F. Supp. 3d 620 (M.D.N.C. 2016) .................................................................21

*In re W. Virginia Rezulin Litig.*,
  585 S.E.2d 52 (W. Va. 2003)................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).................................................................................13, 14, 21

*Ward v. Dixie Nat. Life Ins. Co.*,
  595 F.3d 164 (4th Cir. 2010) ................................................................................18

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  7 F.4th 227 (4th Cir. 2021) .............................................................................11, 12

**Statutes**

42 U.S.C. § 1396a(a)(5)..............................................................................................6

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Loc. Civ. R. 7.02 .........................................................................................................1

Loc. Civ. R. 7.04 .........................................................................................................1

Loc. Civ. R. 7.05 .........................................................................................................1

S.C. Code Ann. § 9-4-10..........................................................................................6, 7

S.C. Code Ann. §§ 44-6-10, et. seq. ...........................................................................6

S.C. Code Ann. §§ 44-42-310, et seq. ................................................................ *passim*

S.C. Code Ann. § 59-123-60.......................................................................................9

ii

**Other Authorities**

Jody L. Herman, Andrew R. Flores & Kathryn K. O'Neill, *How Many Adults and Youth Identify as Transgender in the United States?*................................................3, 11

*MUSC Fact Sheet*, MUSC (March 2022) https://web.musc.edu/-/sm/global-files/fact-books/enterprise-wide-fact-book.pdf.........................................................12

*South Carolina*, KFF (Aug. 2024) https://files.kff.org/attachment/fact-sheet-medicaid-state-SC ..........................................................................................6

*State Health Plan: Our membership and participating employers*, peba.sc.gov (Jan. 2023) https://www.peba.sc.gov/value#:~:text=PEBA%E2%80%99s%20insurance%20programs%20cover%20more%20than%20530%2C000%20people%20throughout%20South%20Carolina................................................................................6, 12

Williams Institute (June 2022), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Pop-Update-Jun-2022.pdf.................................................3, 11

**INTRODUCTION**

The challenged law, S.C. Code Ann. §§ 44-42-310, et seq., ("H 4624") imposes sweeping categorical barriers on access to medical care and does so based on a person's sex and gender. Two such barriers are relevant to this motion.[1]

*First*, S.C. Code Ann. § 44-42-320 (the "Healthcare Ban") prohibits the provision of "gender transition procedures" to any person under the age of 18. As explained in Plaintiffs' Motion for Preliminary Injunction, the Healthcare Ban violates the federal constitutional and statutory rights of hundreds of adolescent children, including Plaintiffs Nina Noe and Grant Goe, who now cannot receive medically necessary healthcare exclusively because they are transgender. The Healthcare Ban also violates the fundamental due process rights of parents of children with gender dysphoria, including Plaintiffs Nancy Noe and Gary Goe, to oversee the medical care of their children.

*Second*, S.C. Code Ann. § 44-42-340 (the "Public Funds Restriction") prohibits state money from being used "directly or indirectly" to provide "gender transition procedures." Like the Healthcare Ban, the Public Funds Restriction violates the federal rights of at least two groups of South Carolinians: individuals receiving care through the Medical University of South Carolina ("MUSC"), including Plaintiff Sterling Misanin, and individuals receiving health insurance through state-funded health insurance plans, such as Medicaid and South Carolina's Public Employee Benefit Authority ("PEBA"), including Plaintiffs Nina Noe (who receives health insurance through South Carolina's Medicaid plan), and Jane Doe and Jill Ray (who receive health

---

[1] Plaintiffs do not submit an accompanying memorandum of law because a full explanation of the motion as set forth in Loc. Civ. R. 7.05 is contained within this motion. *See* Loc. Civ. R. 7.04 (D.S.C.). Further, as of the filing of this motion, conferral with opposing counsel has not been possible under Loc. Civ. R. 7.02 because opposing counsel has not yet entered an appearance or otherwise identified themselves to Plaintiffs.

insurance through PEBA-administered plans). MUSC and state-funded insurance providers, in applying the Public Funds Restriction, have halted all treatment of and coverage for "gender transition procedures," even when medically necessary to treat gender dysphoria.

Because the Healthcare Ban and the Public Funds Restriction each apply indiscriminately across groups that are sufficiently numerous, share common claims and injuries, are represented by Class Representatives with claims typical of the group, and have the support of competent class counsel, class certification under Fed. R. Civ. P. 23(a) is appropriate. Further, because the injunctive relief sought in this case is equally appropriate across each proposed class, certification is appropriate under Fed. R. Civ. P. 23(b)(2).

## PROPOSED CLASSES

*Minor Class*: All minors in South Carolina diagnosed with gender dysphoria and whose medically indicated treatment, as judged by their licensed medical professional, includes or will include the provision of "gender transition procedures," as defined by H 4624.

*Parent Class*: All parents and legal guardians of minor children with gender dysphoria whose medically indicated care, as judged by their licensed medical professional, includes or will include the provision of "gender transition procedures," as defined by H 4624.

*Insurance Class:* All individuals with gender dysphoria who receive health insurance through a state-funded health insurance plan, such as South Carolina Medicaid or South Carolina's PEBA, and who, because of S.C. Code Ann. § 44-42-340, are or will be denied coverage for medically indicated "gender transition procedures," as defined by H 4624.

*Medical University of South Carolina Class*: All individuals with gender dysphoria who receive medical care through MUSC but who, because of S.C. Code Ann. § 44-42-340, are or will be denied care for medically indicated "gender transition procedures," as defined by H 4624.

2

**STATEMENT OF FACTS[2]**

I.     **The Healthcare Ban**

A.     **The Healthcare Ban applies equally to all transgender minors who have or will access "gender transition procedures" in South Carolina.**

The Healthcare Ban, S.C. Code Ann. § 44-42-320, applies equally to all transgender minors who have or will access "gender transition procedures" in South Carolina. The Williams Institute estimates that there are 3,700 transgender youth ages 13-17 in South Carolina.[3] Because the law attaches civil and criminal penalties to any provider in South Carolina who allows minors to access "gender transition procedures," these numerous transgender minors are now (or will be) denied lifesaving care as a direct result of the Healthcare Ban. S.C. Code Ann. §§ 44-42-320(e), 360. This categorical ban applies equally to all transgender minors—although temporary carveouts exist for some minors to "systematically reduce" their dosage of hormone treatment, the law still requires termination of all treatment by January 31, 2025, just a few months from date of filing. S.C. Code Ann. § 44-42-320(c).

B.     **Plaintiffs Grant Goe and Nina Noe, like all transgender minors with gender dysphoria who are seeking medical care, are being denied medically necessary care under S.C. Code Ann. § 44-42-320.**

Plaintiffs Grant Goe and Nina Noe are transgender minors who have been denied medically necessary care under the Healthcare Ban. Both minors suffer from gender dysphoria and will no longer be able to access "gender transition procedures" as defined by H 4624. Without access to

---

[2] Plaintiffs incorporate by reference the statement of facts contained in their concurrently-filed Motion for Preliminary Injunction.

[3] Jody L. Herman, Andrew R. Flores & Kathryn K. O'Neill, *How Many Adults and Youth Identify as Transgender in the United States?*, Williams Institute (June 2022), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Pop-Update-Jun-2022.pdf.

3

this medically necessary care, Goe and Noe, like all transgender minors with gender dysphoria for whom such care is necessary, will suffer harm.

Nina Noe is a fifteen-year-old transgender girl who has experienced feelings of gender dysphoria from a young age. Nina Noe Decl. ¶ 4.[4] Although she was assigned the male sex at birth, at age seven she told her mother that she had a "girl brain and a boy body." Nancy Noe Decl. ¶ 5. Nina was later diagnosed with gender dysphoria. Nancy Noe Decl. ¶ 8. After consultation with her doctors and mother, Nina began hormone replacement therapy ("HRT") to treat her gender dysphoria. Nancy Noe Decl. ¶ 12. She has continued to receive HRT for several years now; the treatment has helped to relieve her gender dysphoria and brought her greater confidence. Nina Noe Decl. ¶¶ 13-15. Nina and her mother Nancy are now deeply concerned that they will not be able to find care for Nina in South Carolina. Nancy Noe Decl. ¶ 14.

Grant Goe is a seventeen-year-old transgender boy who has experienced feelings of gender dysphoria from a young age; he has lived as a boy for nearly four years. Grant Goe Decl. ¶¶ 5, 7-8. After consulting with his physicians and parents, Grant began HRT for the treatment of gender dysphoria. Gary Goe Decl. ¶¶ 10-17. As confirmed by his father, Gary Goe Decl. ¶¶ 19, 22, Grant has been on HRT for the last four months and has experienced significant positive improvement, Grant Goe Decl.¶¶ 16-18. Grant and his family are now deeply concerned that they will not be able to find care for Grant in South Carolina. Gary Goe Decl. ¶ 27.

---

[4] Citations to declarations in this motion refer to the declarations appended as exhibits to Plaintiffs' concurrently-filed Motion for Preliminary Injunction.

4

C.     **The Healthcare Ban applies equally to all parents of transgender adolescents who have been or will be prescribed "gender transition procedures" in South Carolina.**

H 4624 has limited the rights of all parents of transgender adolescents, who have the right to make medical decisions for their children. Any parent who wishes to obtain lifesaving, medically necessary treatment for their child experiencing gender dysphoria will no longer legally be permitted to do so, and will consequently be denied their fundamental right to make decisions concerning the custody and care of their child.

D.     **Plaintiffs Nancy Noe and Grant Goe, like all parents of transgender adolescents with gender dysphoria, are being denied their fundamental right to direct the upbringing of their children by S.C. Code Ann. § 44-42-320.**

Plaintiffs Nancy Noe and Grant Goe are the parents of transgender minors seeking gender-affirming care. They live in South Carolina along with their adolescent children. Both parents are concerned that their minor children will no longer be able to access the care that they need under the Healthcare Ban, which violates both parents' fundamental right to care and custody of their children, just as it violates the rights of all parents of transgender minors in South Carolina.

Plaintiff Nancy Noe is the mother of plaintiff Nina Noe. Nancy Noe Decl. ¶¶ 2-5. Nancy, together with Nina and Nina's physicians, determined that the best course of action for her daughter was to receive medically necessary care for treatment of gender dysphoria. Nancy Noe Decl. ¶ 12. Nancy has seen how gender-affirming care helped her daughter live as her authentic self and dramatically improved her mental health; she believes that this treatment has saved her daughter's life. Nancy Noe Decl. ¶¶ 15-16. Nancy is now concerned that she will no longer be able to care for her daughter in South Carolina. Nancy Noe Decl. ¶ 16.

Plaintiff Gary Goe is the father of plaintiff Grant Goe. Gary Goe Decl. ¶ 3. Gary, together with Grant, Grant's mother, and Grant's physicians, determined that the best course of action for his son was to receive medically necessary care for treatment of gender dysphoria. Gary Goe Decl.

5

¶¶ 10-17. Gary has witnessed an improvement in his son's health and general well-being since receiving treatment for gender dysphoria. Gary Goe Decl. ¶¶ 19, 22. Gary is now concerned that he will no longer be able to obtain care for his son in South Carolina. Gary Goe Decl. ¶ 27.

## II.    The Public Funds Restriction

### A.    The Public Funds Restriction denies health insurance coverage to all those enrolled in state-funded health insurance plans who need "gender transition procedures."

The Public Funds Restriction, S.C. Code Ann. § 44-42-340, which restricts the use of public funds "directly or indirectly" to provide "gender transition procedures," precludes state-funded health plans—including Medicaid and PEBA—from dispersing funds to cover "gender transition procedures."

Defendant South Carolina Department of Health and Human Services ("DHHS") is the "single state agency" charged with administering the Medicaid program in South Carolina. 42 U.S.C. § 1396a(a)(5); S.C. Code Ann. § 44-6-30 (2024). DHHS oversees the processing and disbursement of claims for more than one million patients.[5] Defendant Robert Kerr, Director and head of DHHS, oversees and directs all functions at DHHS. S.C. Code Ann. §§ 44-6-10, 100. To comply with H 4624, DHHS must deny all transgender enrollees of Medicaid in South Carolina coverage for "gender transition procedures," preventing transgender people who are seeking gender-affirming care from obtaining coverage through Medicaid.

---

[5] *Fact Sheet: Medicaid in South Carolina*, KFF (Aug. 2024) https://files.kff.org/attachment/fact-sheet-medicaid-state-SC.

Defendant PEBA manages the health plans of over 530,000 South Carolinian state employees and their dependents.[6] Defendant Peggy Boykin is the Executive Director of PEBA and is "charged with the affirmative duty to carry out the mission, policies, and direction" of PEBA. S.C. Code Ann. § 9-4-10(J). The PEBA board is required to act "in accordance with … applicable provisions of law." S.C. Code Ann. § 9-4-10. PEBA-administered healthcare plans are thus prohibited from dispersing funds for "gender transition procedures," and have now begun denying coverage to transgender South Carolinians for "gender transition procedures" in order to comply with the Public Funds Restriction. Jane Doe Decl. ¶ 12. Transgender public employees who receive healthcare coverage from PEBA-administered healthcare plans, and who are seeking gender-affirming care, will no longer be able to obtain coverage through PEBA.

      **1.**     **Plaintiffs Nina Noe, Jane Doe, and Jill Ray, like all transgender individuals seeking medical care covered by state-funded health insurance plans, cannot receive coverage for medically-necessary "gender transition procedures" under S.C. Code Ann. § 44-42-340.**

Plaintiff Nina Noe is a transgender person who receives healthcare coverage through a South Carolina Medicaid plan. Plaintiffs Jane Doe and Jill Ray are transgender persons who receive healthcare coverage through PEBA-administered health plans. Like all transgender persons enrolled in state-funded health plans seeking medical care, under S.C. Code Ann. § 44-42-340 they can no longer receive coverage for medically-necessary "gender transition procedures."

Plaintiff Nina Noe is a fifteen-year-old transgender girl who is covered by Medicaid. Nina Noe Decl. ¶¶ 5,16. Noe has been diagnosed with gender dysphoria, and after consultation with physicians and her mother, began HRT for treatment of her gender dysphoria. Nancy Noe Decl.

---

[6] *State Health Plan: Our membership and participating employers*, peba.sc.gov (Jan. 2023) https://www.peba.sc.gov/value#:~:text=PEBA%E2%80%99s%20insurance%20programs%20co ver%20more%20than%20530%2C000%20people%20throughout%20South%20Carolina.

¶¶ 8,12. Noe's HRT has helped relieve her gender dysphoria and brought her greater confidence. Nancy Noe Decl. ¶ 13. Noe receives healthcare coverage through a Medicaid plan, and up until now Medicaid has covered her hormone therapy. Nancy Noe Decl. ¶ 16. Noe's mother is now deeply concerned that she will not receive any state coverage under Medicaid for treatment. Nancy Noe Decl. ¶ 16.

Plaintiff Jane Doe is a transgender woman living in Charleston, South Carolina. Doe Decl. ¶ 3. She is a physician employed by the state of South Carolina and has been enrolled in a PEBA-administered plan since her employment began in 2020. Doe Decl. ¶ 4. After consultation with her physicians, Doe began receiving hormone therapy treatment. Doe Decl. ¶ 8. This treatment has dramatically relieved Doe's symptoms of dysphoria and improved her overall well-being. Doe Decl. ¶ 9. After further consultation with physicians, Doe had hoped to receive surgery this year as the next step in her treatment plan, and has scheduled a surgery for November of this year. Doe Decl. ¶ 4. However, she was informed in July of 2024 that her PEBA healthcare plan will have to adhere to state law, indicating to her that PEBA will no longer cover her gender-affirming surgery. Doe Decl. ¶ 12. Doe now faces the significant financial burden of paying for her surgery out-of-pocket. Doe Decl. ¶ 14.

Plaintiff Jill Ray is a transgender woman living in South Carolina. Ray Decl. ¶¶ 3, 8. She is married to a public-school teacher in South Carolina, through whom she receives PEBA healthcare coverage. Ray Decl. ¶ 16. Ray has been receiving gender-affirming care for her gender dysphoria for almost four years. Ray Decl. ¶¶ 9-11. Before she started to receive gender-affirming care, Ray was so depressed and anxious she could not leave her home. Ray Decl. ¶ 10. Gender-affirming care has given Ray her life back. Ray Decl. ¶¶ 17, 18. Building on these improvements, and in consultation with her doctors to treat her gender dysphoria, Ray plans to undergo gender-

8

affirming surgery in the future. Ray Decl. ¶¶ 19, 20. Without the PEBA coverage she receives through her spouse, Ray will not be able to get her medically-necessary procedure. Ray Decl. ¶¶ 16, 22.

### 2. The Public Funds Restriction denies care to all individuals seeking medically indicated "gender transition procedures" through MUSC.

The Public Funds Restriction, S.C. Code Ann. § 44-42-340, also restricts the use of public funds "directly or indirectly" to provide "gender transition procedures" at MUSC, South Carolina's publicly-funded academic health system. The Defendant Board of Trustees manages and controls MUSC. S.C. Code Ann. § 59-123-60. In Fiscal Year 2024, MUSC will receive more than $121 million in state funds. Compl. ¶ 37. MUSC and its Board of Trustees are required to comply with state law. S.C. Code Ann. § 59-123-60. Pursuant to that requirement, and to comply with S.C. Code Ann. § 44-42-340, MUSC has determined that it can no longer offer "gender transition procedures" to patients. Thus, all patients visiting MUSC hospitals and providers will no longer be able to receive gender-affirming care as a result of the Public Funds Restriction.

### 3. Plaintiff Misanin, like all transgender individuals receiving "gender transition procedures" through MUSC, is being denied care under S.C. Code Ann. § 44-42-340.

Sterling Misanin is a transgender man diagnosed with gender dysphoria, living in Charleston, South Carolina. Misanin Decl. ¶¶ 3, 13. After consulting with his physicians, Misanin began HRT and was able to undergo chest masculinization surgery. Misanin Decl. ¶¶ 13, 17. After speaking with his primary care provider at MUSC, Misanin determined that the next step in his treatment plan would be to receive a hysterectomy, and so Misanin scheduled a procedure with MUSC for June 28, 2024. Misanin Decl. ¶¶ 19, 20. MUSC representatives subsequently informed him, just a few days before surgery, that due to the passage of H 4624 they would no longer be able to provide gender affirming care, including gender-affirming hysterectomies. Misanin Decl.

9

¶ 20. Misanin was forced to delay his treatment by several months, taking additional time off work and damaging his reputation with his colleagues. Misanin Decl. ¶ 29. Misanin will also no longer be afforded continuity of care at MUSC for any future "gender transition procedures." Misanin Decl. ¶ 25.

## LEGAL STANDARD

Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of all members only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b)(2) further provides that a class action may be maintained if Rule 23(a) is satisfied and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements . . . but they need not make that showing to a degree of absolute certainty . . . [i]t is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Moyer v. Home Point Fin. Corp.*, No. CV-RDB-20-3449, 2023 WL 6642663, at *4 (D. Md. Oct. 11, 2023) (quoting *Fangman v. Genuine Title, Inc.*, No. CV-RDB-14-81, 2016 WL 6600509 (D. Md. Nov. 18, 2016) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citations omitted))).

## ARGUMENT

The challenged provisions of H 4624 are blanket discrimination and, as other courts have concluded, are therefore susceptible to classwide relief. *See, e.g.*, *Fain v. Crouch*, 342 F.R.D. 109,

10

116 (S.D.W. Va. 2022) *aff'd sub nom. Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024) (certifying class of "all transgender people who are or will be enrolled in West Virginia Medicaid and who are seeking or will seek gender-confirming care barred by the Exclusion"); *Flack v. Wisc. Dep't of Health Servs.*, 331 F.R.D. 361, 370 (W.D. Wisc. 2019) (certifying class of individuals denied coverage under Wisconsin Medicaid's "categorical coverage ban on gender-confirming care"); *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, 345 F.R.D. 328, 337 (S.D. Ind. 2024) (certifying class of minor children denied care, and parents of children denied care, under Indiana's ban on gender affirming healthcare).

## I.     Each Proposed Class satisfies the requirements of Rule 23(a).

### A.     Numerosity

"No definite standard exists as to what size class satisfies the requirements of Rule 23(a)(1)." *Haywood v. Barnes*, 109 F.R.D. 568, 576 (E.D.N.C. 1986) (citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), cert. denied, 449 U.S. 1113 (1981)). "Courts have, however, certified classes composed of as few as eighteen." *Id.* (citing *Cypress v. Newport News General and Nonsectarian Hospital Ass'n.*, 375 F.2d 648, 653 (4th Cir. 1967)); *see also In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) ("As a general guideline, ... a class that encompasses fewer than 20 members will likely not be certified ... while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.") (citing *Newberg on Class Actions* § 3:12 (5th ed. 2021)). Although the precise number of Class Members has not been determined at this time, each proposed class contains at least 40 members and is therefore sufficiently numerous such that "joinder of all class members is impractical." Fed. R. Civ. P. 23(a)(1); *see also In re Zetia*, 7 F.4th at 234.

11

**Minor Class & Parent Class.** The Williams Institute estimates that there are 3,700 transgender youth ages 13-17 in South Carolina.[7] Of those, on information and belief, at least 40 were receiving "gender transition procedures" prior to the enactment of H 4624. *See In re Zetia*, 7 F.4th at 234. Additionally, each member of the Minor Class has at least one corresponding member in the Parent Class. Each Class is therefore sufficiently numerous under Rule 23(a)(1).

**Insurance Class.** State funded insurance plans cover hundreds of thousands of people throughout South Carolina. PEBA's insurance programs cover more than 530,000 people across South Carolina.[8] South Carolina's Medicaid program covers more than one million people throughout the state.[9] Of those covered by state-funded plans, on information and belief, at least 40 were receiving "gender transition procedures" prior to the enactment of H 4624 Public Funding Ban. *See*, *In re Zetia*, 7 F.4th at 234. This Class is sufficiently numerous.

**MUSC Class.** The MUSC Health System admits over 50,000 patients every year.[10] Of those, on information and belief, at least 40 were receiving "gender transition procedures" prior to the enactment of H 4624. *See*, *In re Zetia*, 7 F.4th at 234. This Class is sufficiently numerous.

**B.    Commonality**

"The commonality requirement asks whether there are questions of law or fact common to the class. Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' which showing requires that the claims depend 'upon a common contention.'" *Kenny v. Wilson*, No. 2:16-CV-2794-MBS, 2021 WL 720449, at *4 (D.S.C. Feb. 24, 2021)

---

[7] *See* Herman et al., *supra* note 2.

[8]*State Health Plan: Our membership and participating employers*, *supra* note 6 .

[9] *Fact Sheet: Medicaid in South Carolina*, *supra* note 5.

[10]*MUSC Fact Sheet*, MUSC (March 2022) https://web.musc.edu/-/sm/global-files/fact-books/enterprise-wide-fact-book.pdf.

(quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). To satisfy commonality, the claims "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350 ("What matters to class certification ... [is] the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." (citation omitted)). Here, the common questions of law and fact include, but are not limited to:

    a. Whether H 4624 and Defendants' implementation thereof, as applied to members of the proposed Minor, Parent, Insurance, and MUSC Classes, violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

    b. Whether H 4624 and Defendants' implementation thereof, as applied to members of the MUSC Class and the Insurance Class, violate the prohibition on sex discrimination under Section 1557 of the Affordable Care Act;

    c. Whether H 4624 and Defendants' implementation thereof, as applied to members of the MUSC and Insurance Classes, violate the Americans with Disabilities Act;

    d. Whether H 4624 and Defendants' implementation thereof, as applied to members of the MUSC and Insurance Classes, violate the Rehabilitation Act;

    e. Whether H 4624 and Defendants' implementation thereof, as applied to the members of the proposed Parent Class, violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; and

    f. Whether Defendants should be enjoined from enforcing the challenged provisions.

For each of these questions, common to each proposed Class is "a shared legal analysis [that] will determine whether Plaintiffs are entitled to any of the injunctive relief they seek." *K. C. v. Individual Members of Med. Licensing Bd. of Indiana,* 345 F.R.D. 328, 335 (S.D. Ind. 2024). The central legal analysis here is whether the Healthcare Ban and Public Funding Restriction are discriminatory, an analysis that controlling case law in this Circuit demonstrates will turn on an examination of the statute rather than any individualized analysis of its effect on particular individuals. *See Kadel*, 100 F.4th at 149 (holding that similar transgender healthcare exclusions

13

are discriminatory). The claims are common throughout each Class because neither the Healthcare Ban nor the Public Funds Restriction differentiate amongst the classes of impacted individuals. Instead, the provisions impose "a general policy of discrimination," *Dukes*, 564 U.S. at 353 (citation omitted), whereby all proposed Class Members, including Plaintiffs, suffer a common injury arising from a common policy of discrimination. *Cf. Kadel* 100 F.4th at 146 (holding that exclusion of treatment for gender dysphoria is synonymous with discrimination against transgender people). The "common contention" binding each Class Member is thus whether this general policy of discrimination is unconstitutional or otherwise in violation of federal law, as Plaintiffs contend. *Kenny*, 2021 WL 720449, at *4 (commonality is satisfied if plaintiffs' action will generate a common answer to a common contention).

Each of the Classes is independently bound by common, categorically discriminatory policies. The Healthcare Ban categorically denies adolescents with gender dysphoria access to medically necessary healthcare; because all such individuals are denied access to healthcare, they constitute a single class. The Healthcare Ban also categorically prevents the parents of adolescents with gender dysphoria from exercising their right to parental autonomy; because all such parents are denied this right, they constitute a single class. Under the Public Funds Restriction, state-funded healthcare plans have categorically denied coverage for "gender transition procedures" as defined by the statute; because all patients seeking coverage for these procedures are denied coverage, they constitute a single class. Also under the Public Funds Restriction, MUSC has categorically refused to provide "gender transition procedures" to patients; because all MUSC patients seeking these procedures are denied care, they constitute a single class. Because the challenged provisions are crude and categorical, the claims are common and the commonality requirement under Rule 23(a)(2) is satisfied. *See, e.g.*, *K.C.*, 345 F.R.D. at 336; *Fain*, 342 F.R.D.

14

at 114 ("This [Medicaid] exclusion applies to every member of the class without exception; it is a barrier for all transgender participants who seek or who may seek this treatment.").

Plaintiffs' requested injunctive relief of preventing enforcement of the Healthcare Ban and Public Funding Restriction also supports commonality. "[C]ourts generally recognize [injunctive relief] as the type of redress that by its very nature presents common questions of law and fact." *Kenny*, 2021 WL 720449, at \*5; *see also Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 342 (W.D.N.C. 2020*) aff'd* 2021 WL 4144028 (4th Cir. June 28, 2021) ("While any differences among class members may be relevant to certification of a class seeking money damages under Rule 23(b)(3)… such differences are not relevant to the certification of a class limited to seeking only injunctive rather than monetary relief. As to such a class, so long as 'each individual class member' is not 'entitled to a *different* injunction' then alleged individual differences do not counsel against certification of a class under Rule 23(b)(2).").

### C.   Typicality[11]

Federal Rule 23 requires that "the claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3); *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). "The typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Moodie v. Kiawah Island Inn Co.*, 309 F.R.D. 370, 378 (D.S.C. 2015) (citation omitted); *see also 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513,

---

[11] As the Fourth Circuit has noted, typicality and commonality requirements tend to merge. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 523 (4th Cir. 2022).

523 (4th Cir. 2022) (claims are typical when based on the same conduct of Defendants). Here, the claims are not only typical—they are identical.

The claims of proposed Minor Class Representatives Grant Goe and Nina Noe are identical to those of the Class they seek to represent. These Plaintiffs share with the proposed Class the experience of being adolescents, having gender dysphoria, and being denied access to healthcare to treat gender dysphoria. The Defendants' enforcement of H 4624, and denial of healthcare to transgender minors, are the only facts on which their liability is based. Thus, all Minor Class Representatives share identical claims. *Fain*, 342 F.RD. at *115 (transgender persons met typicality requirement because they were all denied access to treatment); *see also Doe v. Ladapo*, No. 4:23-CV-114-RH, 2023 WL 8271764, at *3 (N.D. Fla. Oct. 18, 2023) (certifying class of transgender minors denied healthcare because all suffered the same injury, namely "the state's prohibition of … care").

By the same reasoning, the claims of proposed Parent Class Representatives, Gary Goe and Nancy Noe, are identical to those of the class they seek to represent. These Plaintiffs share with the proposed Class the experience of parenting transgender children, and the fundamental right to make decisions about appropriate medical care for their children. These parents have all suffered identical restriction to their fundamental rights as a result of H 4624, namely an across-the-board prohibition on "gender affirming procedures" as defined by the statute. Thus, Parent Plaintiffs' claims, like those of their children, are typical of the Class. *Fain*, 342 F.RD. at *115; *see also Lapado*, 2023 WL 8271764 at *4 (explaining that the typicality inquiry was the same for children and parents because "[t]he parents' interests track those of their children").

The claims of proposed Insurance Class Representatives, Nina Noe, Jane Doe, and Jill Ray are all also identical to those of the class they seek to represent. These Plaintiffs share with the

16

proposed Class the experience of having gender dysphoria and being denied coverage for treatment of gender dysphoria by state-funded health plans. All Insurance Class Members will likewise be denied coverage for "gender transition procedures" as defined by H 4624. Doe Decl. ¶ 12. Thus, there is no difference between the claims of Noe, Doe and Ray, and those of the proposed Class Members. *Fain*, 342 F.R.D. at 115; *see also Flack*, 331 F.R.D. at 369 (finding that the plaintiffs' claims were identical to those of other class members, as they arose from the enforcement of the challenged transgender healthcare exclusion).

The claims of proposed MUSC Class Representative Sterling Misanin, are identical to those of the class he seeks to represent. Misanin shares with the proposed Class the experience of having gender dysphoria and being denied treatment for gender dysphoria by MUSC providers. MUSC has uniformly determined that it can no longer offer care for any "gender transition procedures" because of H 4264. *See* Misanin Decl. ¶ 20. Misanin's claims, like those of all other Class Members, will be based on the same course of conduct by MUSC, namely this blanket denial of care stemming directly from H 4264. Misanin and proposed Class Members' claims are therefore identical. *Moodie*, 309 F.R.D. at 378.

Although not every Class Representative (or Class Member) has the same medical history or seeks the same type of "gender transition procedure," neither this fact nor any other peripheral distinction among the Class Members presents an obstacle to class certification. What matters is that the relief sought—here, an order enjoining specific, categorical barriers to healthcare—is shared throughout each proposed Class, and the harms they experience derive from being prevented from making individualized determinations with their families and medical providers by those categorical barriers. *See Fain*, 342 F.R.D. at 115 (rejecting argument that typicality requirement was not met because "the claims of each proposed class members are actually

17

individualized assessments of whether the participants experience gender dysphoria and whether surgical care is appropriate to treat this diagnosis"). In any case, "typicality does not require that every class representative have exactly the same claims as every member of the class." *Moodie*, 309 F.R.D. at 378. Because each Class Representative is asserting a legal claim that is typical of the Class, Rule 23(a)(3) is satisfied.

### D.    Adequacy

Rule 23(a)(4) requires Class Representatives and their counsel to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied here because (1) Plaintiffs have demonstrated that they will effectively protect the interests of the proposed Classes, and (2) Plaintiffs' undersigned counsel will capably represent the proposed Classes as well. *See* Fed. R. Civ. P. 23(a)(4) & (g)(1); *see also Moodie*, 309 F.R.D. at 378 (describing the courts' "two-pronged" adequacy evaluation (citation omitted)).

### 1.    Plaintiffs are adequate Class Representatives.

Plaintiff Class Representatives can "fairly and adequately" represent each Proposed Class because the individual Named Plaintiff's claims are identical to those of the respective Classes, there are no conflicts of interest between Named Plaintiffs and the Class they seek to represent, and none of the Class Members would be harmed in any way by—and all would benefit from—an injunction against the operation of the Healthcare Ban and the Public Funds. *See Kenny*, 2021 WL 720449, at \*7 (granting class certification and finding adequacy requirement satisfied); *Fain*, 342 F.R.D. at 115-16 (same); *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (reasoning that adequacy is defeated only by a "fundamental," not "merely speculative or hypothetical," conflict of interest (citation omitted)).

Each Class Representative has a strong interest in obtaining declaratory and injunctive relief on behalf of themselves and the Proposed Class. *See, e.g.*, Misanin Decl. ¶ 25 (MUSC Class

18

Representative) ("The actions by MUSC have caused me significant harm … and I cannot stay silent about the very real harms that this law inflicts on transgender people like me."); Doe Decl. ¶¶ 15–16 (Insurance Class Representative) (indicating desire to fight against "a law that has devalued me and other transgender people and has created an unnecessary barrier to healthcare for a vulnerable population"); Nina Noe Decl. ¶ 14 (Minor Class Representative and Insurance Class Representative) ("I do not feel safe in my body, and it scares me that this law is hurting many transgender kids in my state who won't be able to travel to get the care they need."); Gary Goe Decl. ¶ 25 (Parent Class Representative) ("We, like every other parent, want [our child] to grow and thrive; we want to protect him from harm. We do not understand why the government, which has never met [our child], thinks it knows our son better than the people and doctors who interact with him on a daily, weekly, and monthly basis.").

Each Class Representative has demonstrated a commitment to the Class they seek to represent. They have assisted in the preparation of the Complaint, searched for and produced records, and maintained regular contact with counsel. They are committed to this case and are adequate Class Representatives.

### 2.       Proposed Class Counsel are adequate.

Plaintiffs and their counsel are committed to "vigorously prosecut[ing] the matter on behalf of the class." *Nelson v. Warner*, 336 F.R.D. 118, 123–24 (S.D.W. Va. 2020) (citation omitted). The vigorous prosecution standard considers the abilities—i.e., the "competence and experience"—of class counsel. *In re W. Virginia Rezulin Litig.*, 585 S.E.2d 52, 69 (W. Va. 2003); *see also Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class.").

19

There is no question that the American Civil Liberties Union Foundation (ACLU), ACLU of South Carolina (ACLU-SC), and Selendy Gay PLLC (Selendy Gay) can fairly, adequately, and vigorously represent the members of each putative class.

*ACLU*, including undersigned counsel, has experience successfully prosecuting class claims on behalf of transgender individuals who are denied medical care. *See K.C.*, 345 F.R.D. at 336 (holding that "ACLU attorney[] … Harper Seldin … ha[s] significant experience in similar cases and ha[s] done substantial work identifying, investigating, and pursuing Plaintiffs' claims"). Counsel Sruti Swaminathan recently joined ACLU from Lambda Legal, where they litigated many cases involving anti-transgender discrimination. *See generally Fain*, 342 F.R.D. at 116 (noting that "Lambda Legal has extensive experience with civil right and class action litigation, specifically with LGBT issues").

*ACLU-SC* has a proven record of successful class litigation in this district, including under Fed. R. Civ. P. 23(b)(2).

In *Kenny v. Wilson*, ACLU-SC obtained classwide expungement for all schoolchildren who were arrested and/or prosecuted for school-based behavior under South Carolina's Disorderly Conduct or Disturbing Schools statutes. *See, e.g.*, *Kenny*, 2021 WL 720449 (granting class certification), *aff'd sub nom Carolina Youth Action Project v. Wilson*, 60 F.4th 770 (4th Cir. 2023) (affirming class certification and classwide expungement).

In *Brown v. Lexington County*, ACLU-SC proved that Lexington County violated the Sixth Amendment by failing to adequately fund indigent defense services in Magistrates Court and obtained classwide relief for a class of individuals who are or will be prosecuted in the Lexington County Magistrates Court. *See* No. 3:17-CV-1426-MBS, 2021 WL 856878 (D.S.C. Mar. 5, 2021) (granting class certification); *see also id.* at ECF No. 348-2 (Jan. 20, 2023) (proposed class action

20

settlement agreement); ECF No. 360 (Feb. 14, 2023) (finding that "Plaintiffs and their counsel have vigorously and adequately represented the Class"); ECF No. 367 (Mar. 9, 2023) (granting final approval of class action settlement). As a result of that litigation, Lexington County agreed to fund 7 additional full-time employees dedicated to providing indigent defense in the Lexington County Magistrates Court.

*Selendy Gay*, including undersigned counsel, specializes in trial advocacy with extensive experience successfully advocating for its clients, including in class actions under Fed. R. Civ. P. 23(b)(2), and in actions supporting the rights of LGBTQ+ people. Corey Stoughton was counsel for the United States in *United States v. North Carolina*, 192 F. Supp. 3d 620 (M.D.N.C. 2016), litigation concerning the federal government's response to a North Carolina law restricting bathroom access for transgender individuals. David Flugman was counsel for Garden State Equality as Intervenor-Defendant in *King v. Governor of the State of New Jersey*, 767 F.3d 216, 220 (3d Cir. 2014), litigation defending New Jersey's ban on sexual-orientation and gender-identity change-efforts (so-called "conversion therapy").

As an example of its class action work, in *Hyland v. Navient Corp.*, 48 F.4th 110, 114 (2d Cir. 2022), *cert. denied* 143 S. Ct. 1747 (2023), Selendy Gay brought a federal class action on behalf of a class of public servant borrowers against a student loan servicer that had advised the class concerning the Public Service Loan Forgiveness program. As part of a significant, multi-pronged settlement agreement, the loan servicer agreed to enhance the firm's internal processes and establish a nonprofit entity to help borrowers access forgiveness. *See Hyland v. Navient Corp.*, No. 18-CV-90310-DLC, 2020 WL 6554826 (S.D.N.Y. Oct. 9, 2021).

## II.    Each Proposed Class Satisfies Rule 23(b)(2).

"Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Accordingly, "civil rights

21

cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture." *Id.* at 361 (citation omitted). Indeed, "[t]he twin requirements of Rule 23(b)(2)—that the defendant acted on grounds applicable to the class and that the plaintiff seeks predominantly injunctive or declaratory relief—make that Rule particularly suited for class actions … seeking a court order putting an end to … discrimination." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 (4th Cir. 2006). As with Rule 23(a)'s requirements, courts routinely rule that Rule 23(b)(2) is satisfied when plaintiffs challenge categorical exclusions from gender-affirming medical care. *See, e.g.*, *Fain*, 342 F.R.D. at 116; *Flack*, 331 F.R.D. at 370; *K.C.*, 345 F.R.D. at 336.

Here, as in those cases, "the declaratory judgment and injunction sought would provide 'meaningful, valuable' and 'indivisible' relief to each class member." *Fain*, 342 F.R.D. at 116 (quoting *Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015)). Therefore, certification of each Proposed Class is appropriate under Rule 23(b)(2).

## CONCLUSION

Wherefore, Plaintiffs' Motion for Class Certification should be GRANTED as to each Proposed Class.

22

Date: August 30, 2024

Respectfully submitted,

/s/ Meredith McPhail

Allen Chaney (Fed. Id. No. 13181)
Meredith McPhail (Fed. Id. No. 13500)
**ACLU OF SOUTH CAROLINA**
P.O. Box 1668
Columbia, SC 29202
T: 864-372-6881
achaney@aclusc.org
mmcphail@aclusc.org

/s/ Sruti Swaminathan

Harper Seldin*
Sruti Swaminathan*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., Fl 18
New York, NY 10004
T: 212-549-2500
hseldin@aclu.org
sswaminathan@aclu.org

/s/ Julie Singer

David S. Flugman*
Corey Stoughton*
Julie Singer*
**SELENDY GAY PLLC**
1290 Avenue of the Americas
New York, NY  10104
T: 212-390-9000
dflugman@selendygay.com
cstoughton@selendygay.com
jsinger@selendygay.com

*Application for Admission Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs*

23