# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Charleston Division

| | |
|---|---|
| STERLING MISANIN, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>ALAN WILSON, in his official capacity as the Attorney General of South Carolina, et al.,<br><br>    *Defendants*. | Case No. 2:24-cv-04734-RMG<br><br>**DEFENDANTS SOUTH CAROLINA PUBLIC EMPLOYEE BENEFIT AUTHORITY'S AND PEGGY BOYKIN'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION AND INTERROGATORIES** |

  Pursuant to Rules 26, 33, and 36 of the Federal Rules of Civil Procedure and the Court's Order regarding discovery, Doc. 43, Defendants South Carolina Public Employee Benefit Authority ("PEBA") and Peggy Boykin (collectively "Defendants") by and through counsel of record, hereby submit the following responses and objections to Plaintiffs' First Set of Requests for Admission and Interrogatories served on October 8, 2024.

## **GENERAL OBJECTIONS**

  1. Defendants make the following General Objections to the Requests and Interrogatories as if separately set forth therein. An assertion of the same, similar, or additional objections in response to a specific Request or Interrogatory does not waive any of these General Objections as to that or any Request or Interrogatory.

  2. By responding and objecting to the Requests and Interrogatories, Defendants do not admit, adopt, or acquiesce in any factual or legal contention, assumption, or implication contained in the Requests or Interrogatories.

  3. PEBA objects to these Requests and Interrogatories to the extent they suggest or could be interpreted to imply that PEBA does anything other than administer the SHP. PEBA

1

does not provide medical services. As such, PEBA cannot confirm diagnosis, cannot determine when individuals were initially diagnosed, or whether that diagnosis is still current. The information PEBA can provide is based on administrative claims data submitted for billing purposes, and it is on the basis of that information that PEBA is responding to these Requests and Interrogatories.

    4.    Defendants provide these Responses without waiving or intending to waive, but rather preserving and intending to preserve:

    (a) All questions as to the competency, relevance, materiality, privilege, immunity, confidentiality, and/or admissibility of the information or documents produced or disclosed in response to these Requests, or the subject matter thereof, in this or any subsequent proceeding, including the trial of this or any subsequent action;

    (b) The right to object on any grounds to the use of any information or documents produced or disclosed in response to these Requests, or the subject matter thereof, in this or any subsequent proceeding, including the trial of this or any subsequent action; and

    (c) The right to object on any ground at any time to any demand(s) for further responses to these or any other Requests.

### **SPECIFIC OBJECTIONS TO THE DEFINITIONS AND INSTRUCTIONS**

    1.    Defendants object to the definition of "Gender Dysphoria" to the extent this definition characterizes gender, sex, or the diagnosis and treatment of gender dysphoria. Defendants object to the assumption or implication that sex is "assigned" and the assumption or implication that sex depends on "primary and/or secondary sex characteristics." Only for purposes of responding to these Requests, Defendants will use a definition of "Gender Dysphoria" that includes the definition Plaintiffs cite from the DSM-5.

    2.    Defendants object to the definition of "Gender-Affirming Care" to the extent

this definition attempts to characterize treatment of Gender Dysphoria, gender identity disorder, transsexualism, related diagnoses, or gender transition as gender-affirming or as healthcare or otherwise contains an assumption or implication about gender or a particular treatment.

3. Defendants object to the Instruction regarding the use of the past tense to include the present tense and vice versa to the extent such instruction is unduly burdensome or overbroad or would encompass materials irrelevant to this litigation or would render any Request or Interrogatory nonsensical or ambiguous.

**SPECIFIC RESPONSES AND OBJECTIONS TO THE REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:** Admit that more than 40 individuals who are currently insured by PEBA have been diagnosed with gender dysphoria.

**RESPONSE:** Defendants object to this Request to the extent that Plaintiffs' instructions on treating past and present tense the same could be interpreted as inconsistent with the request for "current" information regarding individuals who are insured by PEBA and have been diagnosed with gender dysphoria. In responding to this Request, Defendants interpret the "currently" insured by PEBA to mean that on October 15, 2024 the individual's primary insurance was the State Health Plan ("SHP"). Further, in order to determine which of those individuals have been diagnosed with gender dysphoria, Defendants looked for whether any currently insured individuals had any of the following ICD-10 diagnosis codes in the available claims data – F64.0, F64.1, F64.2, F64.8, F64.9 going back to May 21, 2019.

Subject to these objections and clarifications, **ADMITTED**.

**REQUEST FOR ADMISSION NO. 2:** Admit that more than 40 individuals who are currently insured by PEBA and who have been diagnosed with gender dysphoria received gender-affirming medical care covered by PEBA insurance between May 21, 2019 and present.

3

**RESPONSE:** Defendants object to this Request to the extent that Plaintiffs' instructions on treating past and present tense the same could be interpreted as inconsistent with the request for "current" information regarding individuals who are insured by PEBA and have been diagnosed with gender dysphoria. In responding to this Request, Defendants interpret the "currently" insured by PEBA to mean that on October 15, 2024, the individual's primary insurance was the State Health Plan ("SHP"). Further, in order to determine which of those individuals have been diagnosed with gender dysphoria, Defendants looked for whether any currently insured individuals had any of the following ICD-10 diagnosis codes in the available claims data – F64.0, F64.1, F64.2, F64.8, F64.9 since May 21, 2019.

Defendants also object to this Request to the extent the reference to gender-affirming medical care attempts to characterize treatment of Gender Dysphoria, gender identity disorder, transsexualism, related diagnoses, or gender transition as gender-affirming or as healthcare or otherwise contains an assumption or implication about gender or a particular treatment.

Subject to these objections and clarifications, this Request is **ADMITTED**.

## SPECIFIC RESPONSES AND OBJECTIONS TO THE INTERROGATORIES

**INTERROGATORY NO. 1:** For any Request for Admission responded to with anything other than an unqualified admission, identify all facts, communications, and persons that have or contain information supporting the response.

**RESPONSE:** Because Defendants have admitted Requests for Admissions Nos. 1 and 2, even though clarifications about how those Requests should be interpreted were required, Defendants do not believe that any further response to this Interrogatory is necessary or required.

To the extent Plaintiffs contend that a further response is necessary, Defendants object to this Interrogatory as beyond the scope of the Parties' agreement on discovery at this stage

4

of the litigation and the Court's October 7, 2024 Order, Doc. 43, limiting discovery to "requests that are relevant to the question of numerosity with respect to Plaintiffs' pending motion for class certification." Defendants have provided information that goes to numerosity in the responses to other interrogatories set out below and will not be providing any further response at this time.

**INTERROGATORY NO. 2**: Identify the number of individuals currently insured by PEBA who were diagnosed with gender dysphoria between May 21, 2019 and present.

**RESPONSE:** Defendants object to this Request to the extent that Plaintiffs' instructions on treating past and present tense the same could be interpreted as inconsistent with the request for "current" information regarding individuals who are insured by PEBA and have been diagnosed with gender dysphoria. In responding to this Request, Defendants interpret the "currently" insured by PEBA to mean that on October 15, 2024, the individual's primary insurance was the State Health Plan ("SHP"). Further, in order to determine which of those individuals have been diagnosed with gender dysphoria, Defendants looked for whether any currently insured individuals had any of the following ICD-10 diagnosis codes in the available claims data – F64.0, F64.1, F64.2, F64.8, F64.9, from May 21, 2019 to present. Defendants cannot confirm whether any of these individuals still have a gender dysphoria diagnosis or whether that diagnosis was correct when it was made. Defendants are only reporting on the data from their claims database.

Subject to these objections and clarifications, Defendants state that the number of individuals insured by PEBA as of October 15, 2024, with the SHP as their primary insurance and who were diagnosed with gender dysphoria between May 21, 2019 and present is **623**.

**INTERROGATORY NO. 3:** Identify the number of individuals currently under the age of 18 and currently insured by PEBA who were diagnosed with gender dysphoria between

5

May 21, 2019 and present.

**RESPONSE:** Defendants object to this Request to the extent that Plaintiffs' instructions on treating past and present tense the same could be interpreted as inconsistent with the request for "current" information regarding individuals currently under the age of 18 who are insured by PEBA and have been diagnosed with gender dysphoria. In responding to this Request, Defendants interpret the "currently" insured by PEBA to mean that on October 15, 2024, the individual's primary insurance was the State Health Plan ("SHP"). Further, in order to determine which of those individuals have been diagnosed with gender dysphoria, Defendants looked for whether any currently insured individuals who are under age 18 had any of the following ICD-10 diagnosis codes in the available claims data – F64.0, F64.1, F64.2, F64.8, F64.9 from May 21, 2019 to present. Defendants cannot confirm whether any of these individuals still have a gender dysphoria diagnosis or whether that diagnosis was correct when it was made. Defendants are only reporting on the data from their claims database.

Subject to these objections and clarifications, Defendants state that the number of individuals who are currently under the age of 18 and who are insured by PEBA as of October 15, 2024 with the SHP as their primary insurance and who were diagnosed with gender dysphoria between May 21, 2019 and present is **109**.

**INTERROGATORY NO. 4:** Identify the number of individuals currently insured by PEBA who have received or been prescribed gender-affirming medical care, either in the aggregate or by category (puberty-blocking drugs, cross-sex hormones, genital gender reassignment surgeries, nongenital gender reassignment surgeries), between May 21, 2019 and present.

**RESPONSE:** Defendants object to this Request to the extent that Plaintiffs' instructions on treating past and present tense the same could be interpreted as inconsistent with the request

6

for "current" information regarding individuals insured by PEBA. In responding to this Request, Defendants interpret the "currently" insured by PEBA to mean that on October 15, 2024, the individual's primary insurance was the State Health Plan ("SHP"). Further, in order to determine which of those individuals have been diagnosed with gender dysphoria and would have potentially received one of the identified medications or procedures, Defendants looked for whether any currently insured individuals had any of the following ICD-10 diagnosis codes in the available claims data – F64.0, F64.1, F64.2, F64.8, F64.9 from May 21, 2019 to present and had claims data reflecting a current processing terminology ("CPT") code for one of the identified medications or procedures.

Defendants object to this Interrgoatory to the extent the reference to gender-affirming medical care attempts to characterize treatment of Gender Dysphoria, gender identity disorder, transsexualism, related diagnoses, or gender transition as gender-affirming or as healthcare or otherwise contains an assumption or implication about gender or a particular treatment.

Subject to these objections and clarifications, the number of individuals currently insured by PEBA who in the aggregate have received or been prescribed puberty-blocking drugs, cross-sex hormones, genital gender reassignment surgeries, and/or nongenital gender reassignment surgeries, between May 21, 2019 and present is **245**.

**INTERROGATORY NO. 5:** Identify the number of individuals currently under the age of 18 and currently insured by PEBA who have received or been prescribed gender-affirming medical care, either in the aggregate or by category (puberty-blocking drugs, cross-sex hormones, genital gender reassignment surgeries, nongenital gender reassignment surgeries), from May 21, 2019 through present.

**RESPONSE:** Defendants object to this Request to the extent that Plaintiffs' instructions on treating past and present tense the same could be interpreted as inconsistent with the request

7

for "current" information regarding individuals insured by PEBA. In responding to this Request, Defendants interpret the "currently" insured by PEBA to mean that on October 15, 2024, the individual's primary insurance was the State Health Plan ("SHP"). Further, in order to determine which of those individuals have been diagnosed with gender dysphoria and would have potentially received one of the identified medications or procedures, Defendants looked for whether any currently insured individuals had any of the following ICD-10 diagnosis codes in the available claims data – F64.0, F64.1, F64.2, F64.8, F64.9 from May 21, 2019 to present and had claims data reflecting a current processing terminology ("CPT") code for one of the identified medications or procedures.

Subject to these objections and clarifications, the number of individuals currently insured by PEBA, who are currently under the age of 18 and who in the aggregate have received or been prescribed puberty-blocking drugs, cross-sex hormones, genital gender reassignment surgeries, and/or nongenital gender reassignment surgeries, between May 21, 2019 and present is **19**.

**INTERROGATORY NO. 6**: Identify the number of claims made to PEBA for payment, reimbursement, or coverage of the prescriptions and procedures comprising gender-affirming medical care, either in the aggregate or by category (puberty-blocking drugs, cross-sex hormones, genital gender reassignment surgeries, nongenital gender reassignment surgeries), between May 21, 2019 and present.

**RESPONSE:** Defendants object to this Interrogatory to the extent the reference to gender-affirming medical care attempts to characterize treatment of Gender Dysphoria, gender identity disorder, transsexualism, related diagnoses, or gender transition as gender-affirming or as healthcare or otherwise contains an assumption or implication about gender or a particular treatment.

Defendants also object to this Interrogatory to the extent it assumes that PEBA, which is not a medical provider, can definitively ascertain only from billing records whether various medical procedures or medications were provided to treat gender dysphoria as opposed to other accepted, medically necessary reasons for administering such medications or providing such medical procedures.

Subject to these objections, the number of claims made to PEBA for payment reimbursement, or coverage of puberty-blocking drugs, cross-sex hormones, genital gender reassignment surgeries, nongenital gender reassignment surgeries between May 21, 2019 and present for individuals with a primary diagnosis of gender dysphoria is **3964** claims (3,916 pharmacy claims and 48 medical claims). The 48 medical claims consist of 4 patients with 5 claims containing genital related procedures and 21 patients with 43 claims containing non-genital related procedures. The 3,916 pharmacy claims can be broken down as follows:

| **Standard Therapeutic Class Description** | **Patients** | **Transactions** |
|---|---|---|
| Aldosterone Antagonists | 99 | 833 |
| Androgens | 104 | 1242 |
| Antineoplastics | 1 | 1 |
| Estrogens | 125 | 1267 |
| Gonadotrophins | 1 | 1 |
| Mineralocorticoid (Aldosterone) Antagnts | 20 | 104 |
| Miscellaneous | 6 | 30 |
| Other Hormones | 13 | 61 |
| Progesterone | 58 | 358 |
| Systemic Contraceptives | 3 | 19 |

| Deduplicated Patients | 240 | |
|---|---|---|

**INTERROGATORY NO. 7**: Identify the number of claims made to PEBA for payment, reimbursement, or coverage of the prescriptions and procedures comprising gender-affirming medical care, either in the aggregate or by category (puberty-blocking drugs, cross-sex hormones, genital gender reassignment surgeries, nongenital gender reassignment surgeries), that have been denied between May 21, 2024 and present.

**RESPONSE:** Defendants object to this Interrogatory to the extent the reference to gender-affirming medical care attempts to characterize treatment of Gender Dysphoria, gender identity disorder, transsexualism, related diagnoses, or gender transition as gender-affirming or as healthcare or otherwise contains an assumption or implication about gender or a particular treatment.

Subject to these objections, the number of claims made to PEBA for payment reimbursement, or coverage of puberty-blocking drugs, cross-sex hormones, genital gender reassignment surgeries, nongenital gender reassignment surgeries between May 21, 2024 and present that have been denied is **1**.

By: /s/ Heather A. Kirby
    (Responses) on behalf of Defendants

By: /s/ Nicole Jo Moss
    (Objections) as Counsel for
    Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2024, I caused to be served a true and correct copy of the Foregoing Responses and Objections to Plaintiffs' First Set of Requests for Admission and Interrogatories by email to Plaintiffs' Attorneys:

Allen Chaney (Fed. Id. No. 13181) Meredith
McPhail (Fed. Id. No. 13500) ACLU of
South Carolina
P.O. Box 1668
Columbia, SC 29202
T: 864-372-6881
achaney@aclusc.org mmcphail@aclusc.org

Sruti Swaminathan*
Harper Seldin*
American Civil Liberties Union Foundation 125
Broad St., Fl 18
New York, NY 10004 T:
212-549-2500
sswaminathan@aclu.org hseldin@aclu.org

David S. Flugman*
Corey Stoughton* Julie
Singer
SELENDY GAY PLLC
1290 Avenue of the Americas New
York, NY 10104
T: 212-390-9000
dflugman@selendygay.com
cstoughton@selendygay.com
jsinger@selendygay.com

Date: October 29, 2024

                                                   /s/ John Ramer
                                                   John Ramer